**U.S. BANKRUPTCY COURT**

**District of South Carolina**

Case Number:  **10-01103-hb**

Adversary Proceeding Number:  **11-80062-hb**

## ORDER ON MOTION TO DISMISS ADVERSARY PROCEEDING

The relief set forth on the following pages, for a total of 26 pages including this page, is
hereby ORDERED.

**FILED BY THE COURT**
**01/05/2012**



US Bankruptcy Judge
District of South Carolina

Entered: 01/05/2012

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Audrey Sims Nix,<br><br>Debtor(s). | C/A No. 10-01103-HB<br><br>Adv. Pro. No. 11-80062-HB<br><br>Chapter 13 |
| Audrey Sims Nix,<br><br>Plaintiff(s),<br><br>v.<br><br>Household Finance Corporation II<br>Kurt Tavernier,<br><br>Defendant(s). | **ORDER ON MOTION TO DISMISS** |

**THIS MATTER** came before the Court for hearing pursuant to the Amended Motion to Dismiss filed by Defendant Household Finance Corporation II ("HFC")[1] and Plaintiff/Debtor Audrey Sims Nix's Objection thereto.[2]

## I. BACKGROUND AND RELEVANT FACTS

Plaintiff's *Introduction* in the Complaint states that this adversary proceeding is an action to: object to HFC's proof of claim; enforce Plaintiff's right to rescind a consumer credit transaction; void HFC's alleged security interest in Plaintiff's home; and recover actual, statutory, and punitive damages, costs and attorney's fees from HFC pursuant to the Truth-In-Lending Act, Regulation Z, violations of the Real Estate Settlement Procedures Act, violations of the South Carolina Consumer Protection Code, the unauthorized practice

---

[1] Doc. No. 21, filed July 22, 2011. Defendant HFC is the only remaining Defendant in this adversary proceeding. *See* Order Granting Application for Settlement as to Defendant Kurt Tavernier (Doc. No. 29, filed on Oct. 11, 2011).

[2] Doc. No. 30, filed Oct. 12, 2011.

of law, violations of the South Carolina Unfair Trade Practices Act, professional negligence, the acquiescing to and/or aiding and abetting in the unauthorized practice of law, and other claims.

Plaintiff organizes the twenty-six page complaint (plus attachments) into thirteen causes of action. Some of these request affirmative relief in the form of a money judgment or right of setoff or recoupment against HFC. Other "causes of action" or portions thereof are actually allegations defending against the enforcement of HFC's note, mortgage and allowance of HFC's claim filed in Plaintiff's bankruptcy case.[3]

HFC contends that all causes of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[4] HFC argues that Plaintiff has not alleged facts that support any relief and more specifically, that Plaintiff is precluded from revisiting the issues set forth in much of the Complaint because they contradict the confirmed Chapter 13 plan or present issues arising from the same set of facts that could or should have been raised prior to confirmation. For the reasons discussed below, the Court finds that HFC's Motion to Dismiss should be granted in part and denied in part.

## A. PLAINTIFF'S ALLEGATIONS[5]

Plaintiff executed a note and mortgage on May 6, 2005, in favor of HFC. The principal amount of the note was $77,697.48. The mortgage securing the note encumbers Plaintiff's residence located at 124 Brentwood Drive, Greenwood, South Carolina and is properly recorded in book 1852 at page 261.[6]

---

[3] *In re Nix*, 10-01103-HB (Bankr. D.S.C. Feb. 19, 2010).
[4] Fed. R. Civ. P. 12(b)(6) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012.
[5] This portion of the Order includes relevant allegations from Plaintiff's Complaint and documents attached or referenced therein. (Doc. No. 1, filed May 16, 2011).
[6] *Id.* at Ex. A. & B.

On February 19, 2010, Plaintiff filed a voluntary petition for Chapter 13 relief. Plaintiff also proposed a Chapter 13 plan utilizing the form plan approved for use in this district.[7] The plan proposed payments of $370 per month from Plaintiff to the Chapter 13 Trustee for a period of sixty (60) months, to be distributed to creditors pursuant to terms therein.[8] Prior to confirmation, HFC filed a secured proof of claim.[9] HFC's March 19, 2010, claim attached copies of the note and first mortgage referenced above and indicated an arrearage on the note of $6,134.77 presented for payment from the trustee, and a principal balance at that time of $79,347.58.[10] Thereafter on April 26, 2010, Plaintiff filed an amendment to the plan for the purpose of increasing the plan payment only, raising it to $430 per month.

Plaintiff's plan addressed the debt in question as follows:

> 3. <u>Long-term or mortgage debt. Curing default: 11 U.S.C. 1322(b)(3) and/or (5):</u>[11]
> a. Arrearage payments.  The trustee shall pay the arrearage as stated in the creditor's allowed claim or as otherwise ordered by the court to **HFC** at the rate of **$40.00** or more per month, for **Residence**, along with **0%** interest. The creditor shall apply trustee payments solely to those designated arrearages, i.e., those arrearages accruing before the month specified in (b)

---

[7] *See* SC LBR 3015-1 (requiring every Chapter 13 debtor to complete the form plan or to file a plan in substantial conformance with the form plan).  Alterations to the form plan are permitted as follows:

> A.  ADDITIONS, MODIFICATIONS, OR DELETIONS: All additions or modification to the Court's form plan . . . are highlighted by italics.  Deletions are noted as "Not Applicable" or by striking through the deleted provisions.  If changes are substantial or if an alternative plan is proposed, a cover sheet that summarizes and identifies the changes shall be file and served herewith.

SC LBR 3015-1, Ex. A, at ¶ I(A).
[8] Doc. 1, Ex. C (Chapter 13 plan attached to HFC's POC)
[9] *Id.* (POC No. 3-1, filed Mar. 19, 2010).
[10] HFC also holds a second mortgage claim for $14,517.00.  This claim was valued at $0 in the plan pursuant to § 506 to be paid as an unsecured claim in the plan.
[11] *See supra* note 7. Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.  Sections 1322(b)(3) and (5) state that the plan may:

> (3) provide for the curing or waiving of any default; [and]
> . . . .
> (5) . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due

11 U.S.C. § 1322(b)(3)-(5) (2010).

below.  For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.

b. Maintenance of regular non-arrearage payments.  Beginning **April 2010** the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor.  The creditor shall apply each payment under this paragraph solely to post-petition obligations that accrue during or after the month specified herein.[12]

Additionally, the plan included the following general language regarding the rights of secured creditors:

B.  <u>Secured Creditor Claims:</u> The plan treats secured claims as follows:

1.  <u>General Provisions:</u> The terms of the debtor's pre-petition agreement with a secured creditor shall continue to apply except as modified by this plan, the order confirming the plan, or other order of the Court.  Holders of secured claims shall retain liens to the extent provided by 11 U.S.C. § 1325(a)(5)(B)(i). . . .  Secured creditors that will be paid directly by the debtor may send standard payment and escrow notices, payment coupons, or inquiries about insurance, and such action will not be considered a violation of the automatic stay.[13]

Furthermore, the plan set forth the following instructions and terms regarding requests for distributions:

IV. PLAN DISTRIBUTIONS TO CREDITORS.  To receive a distribution from the trustee, a proof of claim, including adequate supporting documentation, must be filed with the Court. . . .  Confirmation of this plan does not bar a party in interest from objecting to a claim.[14]

In addition to these provisions, the plan included a general reservation stating that "[n]othing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party

---

[12] Doc. No. 1, Ex. C.
[13] *Id.*
[14] *Id.*

with respect to any causes of action owned by the debtor."[15]   The plan was confirmed

without objection on April 29, 2010.[16]

On January 21, 2011[17], almost nine (9) months after confirmation, Plaintiff sent HFC

a Qualified Written Request ("QWR").[18]   Plaintiff's QWR demanded information about the

arrearage and loan balance charges and calculations as well as information and

documentation to support the validity of the underlying note and mortgage, its secured

status, and HFC's standing to pursue any claims thereunder.[19]   Plaintiff alleges in the

Complaint that HFC has failed to properly respond.

On February 15, 2011, Plaintiff amended her schedules in her bankruptcy case to list

any claim by HFC as a result of the note and mortgage as "disputed" and to "reserve[] her

rights to seek redress under any applicable state or federal consumer protection law, by way

of vitiation of the lien, damages, setoff or recoupment against the claim at issue, and for

costs and attorney fees."[20]

In her Complaint, Plaintiff alleges that this Court has jurisdiction over the parties and

subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.   Plaintiff also

claims that this matter is a core proceeding as defined by 28 U.S.C. § 157 and that this is a

---

[15] *Id.*

[16] Doc. No. 14, C/A No. 10-01103-HB.

[17] The Court's docket in the bankruptcy case indicates that much activity occurred during the nine (9) months between plan confirmation and this event, including: a Motion for Relief from Stay filed by HFC alleging a default and Plaintiff's objection thereto (Doc. Nos. 20-21); dismissal of the bankruptcy case due to payment defaults before the Motion for Relief from Stay could be heard (Doc. No. 24); reinstatement of the case on debtor's Motion after the default was cured (Doc. Nos. 26, 29, 31); and an Amended Motion for Relief from Stay and Plaintiff's objection thereto. (Doc. Nos. 36 & 38).  However, these events were not included in Plaintiff's Complaint, so they are not considered here.

[18] Doc. No. 1, Ex. D.

[19] *Id.*   Reference is made to the QWR and the full content will not be repeated here, as it included forty-two (42) items.

[20] *Id.* at 8, ¶ 48.

matter arising in a case under Title 11.[21]    HFC did not raise any challenge to these

allegations in the relevant Motions.

## B. CAUSES OF ACTION

HFC's Motion asserts that certain pre-confirmation matters cannot be pursued in this

adversary proceeding because they are precluded by confirmation of the plan.    The

following labeled causes of action (or portions thereof) in the Complaint[22] are based on pre-

confirmation activity: 1) *Count I, objection to the claim filed by HFC* (as to any challenge

that could have been raised pre-confirmation)[23]; 2) *Count II, violation of the automatic stay*

(to the extent that it relies on pre-confirmation actions); 3) *Count IV, fraud on the court,*

---

[21] *Id.* at 2, ¶¶ 2-3.

[22] Plaintiff acknowledged that she did not sufficiently plead a claim for relief under Count V, Real Estate Settlement Procedures Act ("RESPA"), and withdrew this cause of action. (Doc. No. 30 at 26).  In addition, Plaintiff consented to the dismissal of Count VII, Fair Debt Collection Practices Act ("FDCPA") and voluntarily withdrew this cause of action. *Id.* at 29.

[23] Plaintiff included a cause of action in the Complaint labeled "Count I Objection to the Proof of Claim filed by HFC." (Doc No. 1 at 6-9, ¶¶ 38-55 (incorporating the allegations of the prior 38 paragraphs)).  This cause of action alleges the following:

> Plaintiff objects to the POC on a number of issues: (i) the lack of substantiating the accounting of the debt due on the note; (ii) the preparation of the POC by Lawrence J. Buckley . . . an attorney . . . not licensed to practice law in the State of South Carolina; (iii) the preparation of the POC by Buckley who is also the Executive Vice President and Managing Attorney for National Bankruptcy Services . . . and is without knowledge of the Nix mortgage loan account; and (iv) the POC is filed without knowledge and with limited unverified documentation of the alleged debt due on the note.

*Id.* at 7, ¶ 43.  The allegations also state that Plaintiff seeks:

> vitiation of the lien, damages, setoff or recoupment against the claim at issue, and . . . costs and attorney fees . . . that HFC intentionally filed a false and fraudulent POC as a device to perpetuate fraud upon this Court, the Chapter 13 Trustee, the scheduled creditors in this case, and the Debtor in this proceeding.

*Id.* at 8, ¶¶ 48-49.  Plaintiff further alleges "that the POC is not prima facie valid as to HFC because it is not supported by a credible or appropriate underlying writing." *Id.* at 9, ¶ 53.  Therefore, Plaintiff not only challenges the amount of the claim and demands setoff and recoupment, but also requests damages, costs and attorney's fees for prosecution of the matter.  Furthermore, language challenging the claim is found throughout the remaining portion of the Complaint under other causes of action. *See id.* at 9-26, ¶¶ 56-164.

> Throughout the Complaint, Plaintiff does not appear to clearly challenge the validity or amount of any particular charge or calculation found in the claim.  However, the Complaint alleges that the Plaintiff "is current on all Chapter 13 plan payments, including all post-petition payments due to HFC." *Id.* at 9-10, ¶¶ 59, 67-68.  In addition, it merely states that "HSC [sic] has not produced an itemized loan account history to substantiate its allegation that Plaintiff owes the aforesaid arrearages," *id.* at 10, ¶ 69, and asserts that "HSC [sic] has not produced an itemized loan account history to substantiate its allegation that Plaintiff is not current on payments." *Id.* at ¶ 70.

requesting relief based on HFC's representations in the claim and seeking damages; 4) *Count VI, Truth-In-Lending Act ("Regulation Z") and rescission actions*, claiming that HFC's conduct with regard to the closing and the pre-petition loan transaction entitles Plaintiff to a right to rescind the transaction, along with an award of actual damages and reasonable attorney's fees; 5) *Count IX, attorney preference—South Carolina Consumer Protection Code ("SCCPC")*, asserting that HFC did not ascertain prior to the loan closing Plaintiff's preference for legal counsel to represent her in the loan transaction, and therefore, Plaintiff is entitled to statutory penalties, the right to repay the unpaid balance of the loan without finance charges and interest, and reimbursement to Plaintiff of double the amounts she paid to third parties at closing, plus costs and attorney's fees; 6) *Count X, unauthorized practice of law* with respect to HFC's preparation of the loan documents presented to Plaintiff at the closing without the supervision of a South Carolina licensed attorney. Plaintiff requests that all equitable claims be forfeited, the mortgage be cancelled, and that she be awarded costs and attorney's fees; 7) *Count XI, aiding and abetting breach of fiduciary duty* by retaining former Defendant Kurt Tavernier to conduct the closing of the loan and requesting relief similar to that set forth in Count X; 8) *Count XII, South Carolina Unfair Trade Practices Act ("SCUTPA")* (it appears that both pre- and post-confirmation acts may be referenced); and 9) *Count XII, unconscionability—S.C. Code § 37-5-108*, asserting that the mortgage transaction should be declared void because the note and mortgage are illegal due to the fact that they were obtained through the aiding and abetting of the unauthorized practice of law.

The following are also included in the Complaint but do not involve pre-confirmation activity: 1) *Count I, objection to the proof of claim filed by HFC* (to the extent

that Plaintiff challenges any post-confirmation acts of HFC)[24]; 2) *Count II, violation of the automatic stay* (to the extent that it relies on allegations of post-confirmation actions); 3) *Count III, demand for accounting*; 4) *Count VII, failure to respond to QWR*; and 5) *Count XII, SCUTPA* (to the extent that it involves allegations of post-confirmation conduct).

## II. DISCUSSION OF APPLICABLE LAW

### A. STANDARD OF REVIEW

HFC has moved for dismissal of the Complaint for failure to state a claim upon which relief can be granted.  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; 'importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [the non-moving party's] defenses.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  In addition to reviewing the complaint, the Court may "'consider as well other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference.'" *Matrix Capital Mgmt. Fund, LP v. BaringPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007)).

A motion pursuant to Rule 12(b)(6) should be considered with the assumption that the facts alleged in the complaint are true. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

The complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, to survive a motion to dismiss, the pleader must provide more than mere "labels and conclusions, and a formulaic

---

[24] *See id.*

recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (citations omitted).    Furthermore, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).    Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient. *Id.*    "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S. Ct. 992 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229 (1984)).

HFC moves for a dismissal under Fed. R. Civ. P. 12(b)(6) or alternatively, for a judgment on the pleadings in its favor pursuant to Fed. R. Civ. P. 12(c).    "A Rule 12(c) motion for judgment on the pleadings should be decided under the same standard as a Rule 12(b)(6) motion." *Caudill v. S.C. Criminal Justice Acad.*, C/A No. 3:10-2291-JFA-JRM, 2011 WL 4479594, at *1 (D.S.C. Aug. 11, 2011) (citing *Burbach Broad. Co. v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002)).    However, a party may move for a judgment on the pleadings after the pleadings are closed, but early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c).    In addition, unlike a Rule 12(b)(6) motion, the Court is to consider the answer as well as the complaint on a motion under Rule 12(c). *See Fitchett v. Cnty. Of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 11, 2011).

In the instant proceeding, HFC has not filed an Answer to Plaintiff's Complaint. Therefore, the pleadings have not closed and the Court may not consider a judgment on the

pleadings under Fed. R. Civ. P. 12(c).[25]  Instead, the Court will review the allegations of the

Complaint pursuant to the Rule 12(b)(6) standard.

## B. THE PRECLUSIVE EFFECT OF PLAN CONFIRMATION

HFC argues that all causes of action or challenges in the Complaint arising from

conduct or events that took place prior to confirmation of the plan, or that existed pre-

confirmation, should be dismissed because they are barred by *res judicata*, judicial estoppel,

equitable estoppel, and waiver.  Plaintiff counters, asserting that the reservation of rights

provisions in her confirmed plan specifically contemplated Plaintiff's ability to assert these

causes of action and challenges post-confirmation.

It is well-established that the doctrine of *res judicata* applies to the bankruptcy

context. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S. Ct. 2205 (1979).  "*Res judicata*, or claim

preclusion, bars relitigation of claims that were or could have been raised in a prior

proceeding between the same parties." *Hasalia v. Walker (In re Walker)*, 416 B.R. 449, 462

(Bankr. W.D.N.C. 2009) (citing *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008)).  In

order for *res judicata* to apply, three conditions must be satisfied:

> 1) the prior judgment was final and on the merits, and rendered by a court of
> competent jurisdiction in accordance with the requirements of due process; 2)
> the parties are identical, or in privity, in the two actions; and 3) the claims in
> the second matter are based upon the same cause of action involved in the
> earlier proceeding.

*First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat*

*Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citations omitted).

---

[25] The Court notes that HFC's Motion included various factual allegations and references to the record that are
outside the scope of the Complaint, including its Motion for Relief from Stay and the Plaintiff's Schedules in
the bankruptcy case.  The Court did not consider these matters when determining its outcome on the instant
Motion. *See supra* note 17.  Although these matters may be on the docket of the main bankruptcy case, they are
not a part of the instant adversary proceeding and were not admitted into evidence.  Therefore, the Court need
not convert this motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d). *See*
*McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

The *res judicata* effect of a confirmed Chapter 13 plan on the debtor and creditors is set forth in § 1327. *See In re Myers*, C/A No. 06-32029, 2008 WL 345527, at *3 (Bankr. S.D. Ill. Feb. 6, 2008) ("Section 1327(a) . . . serves the same purpose as the general doctrine of *res judicata*." (citing *In re Mersmann*, 505 F.3d 1033 (10th Cir. 2007))).  This Code section states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claims of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a) (2010).  A confirmed plan must have *res judicata* effect "so that all parties may rely on it without concern that actions that they may later take could be upset because of a later change or revocation of the [confirmation] order." *Myers*, 2008 WL 345527, at *3 (citations omitted).

Confirmation is considered "the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan." *In re Durham*, 260 B.R. 383, 386 (Bankr. D.S.C. 2001) (quotation marks and citations omitted). "Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so." *Varat Enters.*, 81 F.3d at 1315 (citations omitted).  Furthermore, "federal courts have consistently applied *res judicata* principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order." *Id.* (citations omitted); *see also Snow v. Countrywide Home Loans Inc. (In re Snow)*, 270 B.R. 38, 41 (D. Md. 2001) ("It is well accepted that 'once a plan is

11

confirmed, all questions which could have been raised pertaining to such plan are *res judicata*.'" (quoting *In re Luria*, 175 B.R. 601, 608 (Bankr. D. Md. 1994))).

The majority of courts addressing reservation of rights clauses in *Chapter 11* plans have concluded that "a general reservation of rights does not suffice to avoid *res judicata*." *Browning v. Levy*, 238 F.3d 761, 774 (6th Cir. 2002); *see also D & K Props. Crystal Lake v. Mut. Life Ins.*, 112 F.3d 257, 261 (7th Cir. 1997); *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 868 (E.D. Mich. 2005) *D & K Props.*, 112 F.3d at 261. *In re Kimball Hill, Inc.*, 449 B.R. 767, 777 (Bankr. N.D. Ill. 2011) (citing *D & K Props.*, 112 F.3d at 261). These courts reason that "[a] blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." *Id.*[26]

Chapter 13 courts have found the approach adopted by the majority of Chapter 11 courts to be "persuasive by analogy." *Hearn v. Bankr of NY (In re Hearn)*, 337 B.R. 603, 611 (Bankr. E.D. Mich. 2006). Accordingly, Chapter 13 courts have adopted that standard, requiring the reservation of claims to be expressed and specifically identified before they can overcome any *res judicata* effect. *In re Porter*, 382 B.R. 40, 41 (Bankr. D. Vt. 2008).

---

[26] Some courts qualifying this rationale have held that "[a] reservation is sufficient if it reserves a *category or type of claim*, and it is not required that individual claims and specific defendants be specified." *In re Railworks Corp.*, 325 B.R. 709, 717 (Bankr. D. Md. 2005) (emphasis added). Further, "[a]lthough a minority of courts . . . have held that a blanket reservation of rights survives a *res judicata* challenge, their rationale was generally based on the practicalities of shepherding large Chapter 11 cases to confirmation." *In re Porter*, 382 B.R. 29, 40 (Bankr. D. Vt. 2008) (discussing the court's analysis in *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 570 (S.D.N.Y. 2003), *aff'd*, 104 F. App'x 1999 (2d Cir. 2004)). However, these concerns "do not, generally speaking apply to Chapter 13 cases where there are typically substantially fewer creditors and substantially less complex claims." *Id.*

Plaintiff's plan represented that she and HFC are parties to a pre-petition contract that establishes a debt secured by a lien on Plaintiff's principal residence and that Plaintiff is in default on her pre-petition contractual obligations. Plaintiff proposed that she tender and HFC accept a cure of that default through plan payments from the Chapter 13 Trustee on any allowed claim, that ongoing contractual payments directly from Plaintiff to HFC should continue and that HFC should apply all payments as provided in the contract, as modified by the plan.[27] The plan provides that secured creditors shall retain their liens unless otherwise provided and Plaintiff did not present any challenges or causes of action related to the execution or validity of the note and mortgage therein. Plaintiff did not raise any complaints related to HFC's conduct in the case to the point of confirmation nor aver any other disputes based on facts available at that time. Plaintiff's proposed plan was confirmed. The assertion now of causes of action and challenges arising from the same set of facts relied upon for confirmation is contrary to the effect of § 1327(a) and Fourth Circuit *res judicata* precedent.[28]

Plaintiff's confirmed plan included specific instructions relating to creditors' claims for payment from the trustee. These instructions state that, "[t]o receive a distribution from the trustee, a proof of claim, including adequate supporting documentation, must be filed

---

[27] As a proponent of that plan and by proposing and seeking confirmation, Plaintiff's actions also represented the following to the Court: "the plan has been proposed in good faith and not by any means forbidden by law," 11 U.S.C. § 1325(a)(3); "the debtor will be able to make all payments under the plan and to comply with the plan," *id.* § 1325(a)(6); and "the action of the debtor in filing the petition was in good faith." *Id.* § 1325(a)(7).

[28] *See supra* at 10-12. Even if Plaintiff asserts that she was somehow unaware of these challenges before the plan was confirmed, this would not preclude the *res judicata* effect on these causes of action. Any lack of knowledge regarding the existence of these causes of action does not excuse a failure to assert them prior to or during the Chapter 13 confirmation proceeding. *See Varat Enters.*, 81 F.3d at 1316 ("Actual knowledge of a potential claim however is not a requirement for application of *res judicata* principles." (citing *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986) *cert. denied*, 480 U.S. 932, 107 S. Ct. 1571 (1987))). For *res judicata* purposes, "'it is the existence of the present claim, not party awareness of it, that controls.'" *Id.* (quoting *Harnett*, 800 F.2d at 1313). Consequently, if Plaintiff did lack knowledge of these claims, it would not prevent the Court from applying *res judicata* to bar them, even considering the allegations in the light most favorable to Plaintiff.

13

with the Court. . . . Confirmation of this plan does not bar a party in interest from objecting to a claim."[29]  This language does not defeat any preclusive effect of the other plan provisions discussed above.[30]  Rather, it works together with the others to allow more time for claim resolution to the benefit of both the creditor and the debtor (and trustee) when necessary and appropriate.  On these facts, this provision does not leave the door open to pre-confirmation causes of action against this creditor or challenges to its claim that are contrary to the specific terms found in the confirmed plan or to its preclusive effect.  Rather, it only cracks the window to allow a passageway for challenges that are not otherwise barred.

In this case, examining the plan as a whole, the window is open only far enough to permit challenges to the allowance of the claim by applying the terms of the pre-petition contract between the parties as modified by the plan.  This window shuts if any such challenge is contrary to matters finally determined in this case by confirmation, including disputes that could or should have been raised prior to confirmation arising from the same set of facts.[31]  For example, in this case such challenges left undecided would include objections to the calculations and contractual charges found in the claim figures, or to the allowance of the claim for payment by the trustee.  Challenges questioning the validity of HFC's underlying documents or the circumstances surrounding the execution of the note

---

[29] Doc. No. 1, Ex. C at ¶ IV. It is noteworthy that the language states that the purpose of the claim is "to receive distributions under the plan from the trustee," which, in this case, would relate only to the arrearage claim to be paid to HFC by the trustee.  As the plan provides that Plaintiff will continue with ongoing payments directly to HFC per the pre-petition contract terms, HFC did not have to file a claim for those payments to continue.

[30] Chapter 13 plans in this district may be confirmed prior to the deadline for filing proofs of claim. Consequently, post-confirmation review of and objections to claims for payment may be necessary.  However, confirmation of the plan *may* preclude post-confirmation challenges to claims if the specific terms of the plan or the facts surrounding confirmation indicate that the amount of a particular claim or any portion thereof *was* addressed by the plan or prior to confirmation of the plan.

[31] *When the facts warrant* reservation of a larger dispute (i.e., a challenge to the creditor's secured status, a reservation of identified causes of action, etc.), a Debtor may so state in the plan, assuming the debtor can meet all requirements for confirmation.

and mortgage, whether the debt is secured by Plaintiff's residence, whether Plaintiff was in default pre-petition, whether regular post-petition contractual payments should continue, etc., are barred.

Plaintiff further asserts that the language "[n]othing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor"[32] eliminates any *res judicata* effect of confirmation on her claims against HFC. The Court disagrees.

Given the facts of this case and aligning with the Chapter 13 cases discussed above, this Court cannot conclude that the blanket reservation of rights in the form plan is sufficient in this instance to defeat HFC's assertion of *res judicata* as a bar to Plaintiff's causes of action or challenges based on pre-confirmation activity that arise from the same or related facts that were relevant to confirmation of the plan. Plaintiff proposed and confirmed this plan with specific terms applicable to HFC that directly contradict many of the disputes raised in this adversary.[33] The confirmed plan explicitly states that HFC holds a claim secured by Plaintiff's principal residence, affirms the continued application of the pre-petition agreement as modified by the plan, addresses an acknowledged default, and requires contractual payments to continue with no mention of any need to question the validity of the loan transaction nor a specific reservation of any pre-confirmation cause of action against HFC. Therefore, this catch-all reservation of rights clause does not allow Plaintiff to avoid

---

[32] Doc. No. 1, Ex. C at ¶ V.

[33] The general reservation of rights clause in Plaintiff's Chapter 13 plan is included in the standard form plan for this district. The inclusion of this clause was not intended to allow debtors, as proponents of the plan, to enjoy the protections of a confirmed Chapter 13 plan, and then to later benefit from a change of position. *See, e.g.*, *In re Burretto*, C/A No. 05-07146-JW, 2008 Bankr. LEXIS 4138, at *9-*10 (Bankr. D.S.C. July 23, 2008) (questioning the debtors' challenge to creditor's post-confirmation Motion for Relief from Stay where the grounds for debtors' objection were that the creditor lacked standing to pursue the motion. The Court called this challenge into doubt since it was clearly contrary to the information in debtors' original bankruptcy schedules, the position taken in the confirmed plan, the previously uncontested proof of claim, and the debtors' performance under the loan documents and plan prior to creditor's motion).

the post-confirmation preclusive effects of *res judicata* and § 1327(a) on her debtor/creditor relationship with HFC.[34]

Considering the preclusive effect of the confirmation order, and when viewing the allegations of the Complaint as true, the Court finds that the following causes of action that existed pre-confirmation should be **dismissed in their entirety**: 1) *Count IV, fraud on the court*; 2) *Count VI, Truth-In-Lending Act ("Regulation Z") and rescission*; 3) *Count IX, attorney preference—SCCPC*; 4) *Count X, unauthorized practice of law*; 5) *Count XI, aiding and abetting breach of fiduciary duty*; and 6) *Count XIII, unconscionability—S.C. Code § 37-5-108*.  Further, the following causes of action should be **dismissed in part**: 1) *Count I, objection to the proof of claim filed by HFC*—Plaintiff is precluded from raising any challenge to HFC's claim based on pre-confirmation conduct, except for challenges to the allowance of the claim when applying the terms of the pre-petition contract between the parties as modified by the plan and only to the extent that the challenge is not contrary to matters finally determined in this case by confirmation, including disputes that could or should have been raised pre-confirmation arising from the same set of facts; 2) *Count II, violation of the automatic stay*—to the extent that it is based on allegations of pre-confirmation activity; and 3) *Count XII, SCUTPA*—to the extent that it involves pre-confirmation conduct.

---

[34] This determination is based on a fact-specific *res judicata* analysis and the Court reserves comment on the effect of a general reservation such as this on any other party or parties that are not mutually bound by a confirmed plan.  Collateral estoppel may also apply to bar the pursuit of certain causes of action asserting issues that were decided by prior orders of this Court.  As applied to these facts, the two preclusion doctrines need not be distinguished and produce the same result.  Any issue regarding equitable estoppel, judicial estoppel, and waiver, which HFC claims also preclude Plaintiff from asserting pre-confirmation causes of action and challenges, is more appropriately considered after weighing the evidence and not at the Rule 12(b)(6) stage of this proceeding.

### C. REQUEST TO DISMISS REMAINING CAUSES OF ACTION

The remaining causes of action challenged by HFC's Rule 12(b)(6) Motion are: 1) *Count I, objection to the proof of claim filed by HFC*—to the extent that it is based on allegations of post-confirmation conduct or events; 2) *Count II, violation of the automatic stay*—to the extent that it is based on post-confirmation activity; 3) *Count III, demand for accounting*; 4) *Count VII, failure to respond to QWR*; and 5) *Count XII, SCUTPA*—to the extent that it involves post-confirmation conduct or events.

### 1. OBJECTION TO PROOF OF CLAIM

The Court cannot find from a review of the Complaint and applicable law that Plaintiff is precluded from asserting any causes of action or challenges in its objection to claim, if any, that are based on post-confirmation actions of HFC.

### 2. VIOLATION OF THE AUTOMATIC STAY

As stated above, Plaintiff's causes of action for damages resulting from violation of the automatic stay must be dismissed to the extent that they rely on pre-confirmation acts. In the unlikely event that any residual portion of that cause of action asserts a violation of the stay as a result of the proof of claim filed by HFC, it must be dismissed as well.[35]  First, the mere filing of a proof of claim does not constitute the practice of law, as alleged in the Complaint in support of the requested relief.  This Court has continually allowed third parties as well as non-attorneys to file proofs of claim.  Therefore, Plaintiff's allegation that HFC's claim was improper because it was filed by an out-of-state attorney is without merit.[36]  Additionally, the filing a proof of claim alone does not constitute a violation of the automatic stay.  As this Court has made evident before,

---

[35] Doc. No. 1 at 9, ¶ 57.

[36] *Id.* at 7, ¶ 43 (setting forth the reasons why HFC's POC was improper).

> the automatic stay serves to protect the bankruptcy estate from actions taken
> by creditors outside the bankruptcy court forum, not legal actions taken
> within the bankruptcy court.   The filing of a Proof of Claim before a
> bankruptcy court, which is in control over the process of administering the
> property of the bankruptcy estate, is the logical equivalent of a request for
> relief from the automatic stay, *which cannot in itself constitute a violation of
> the stay pursuant to* [§ 362(k)].

*In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000) (emphasis added) (citing *In re FRG, Inc.,* 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990)).   Consequently, HFC's filing of the claim or continued assertion of that claim does not, in itself, constitute a violation of the automatic stay, warranting recovery pursuant to § 362(k).   Accordingly, this portion of Plaintiff's cause of action shall be dismissed.

Any portions of this cause of action that may be based on allegations of post-confirmation conduct by HFC, other than the filing of the proof of claim, survive HFC's challenge.

### 3. DEMAND FOR ACCOUNTING

In South Carolina, "[a]n action for an accounting is an action in equity." *Consignment Sales, LLC v. Tucker Oil Co.*, 391 S.C. 266, 272, 705 S.E.2d 73, 76 (App. 2010) (citing *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 427, 673 S.E.2d 448, 453 (2009)).   "Generally, equitable relief is available only where there is no adequate remedy at law." *Milliken & Co. v. Morin*, 386 S.C. 1, 8, 685 S.E.2d 828, 832 (App. 2009) (citing *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989)).   "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Id.* (internal quotation marks and citations omitted).

Both the demand for accounting and the violation of the automatic stay claims arise from the same allegations: that Plaintiff is current on all payments owed to HFC and that HFC "misapplied payments and/or charged various fees to Plaintiff's account . . ."[37] Consequently, Plaintiff asserts that HFC violated the automatic stay and demands "a full and detailed accounting of her mortgage loan with documentation of charges posted to the account, payments to third parties, and credits by Plaintiff and/or other parties."[38]  In both instances, the alleged misapplication of payments serves as the basis for the cause of action and as grounds for damages.[39]  Because Plaintiff seeks the same relief in an action at law— violation of the automatic stay under § 362(k)—and in equity—demand for accounting—the Court concludes that the cause of action for violation of the stay is sufficient and Plaintiff is precluded from also asserting a demand for accounting.

The claim under § 362(k) serves as an adequate remedy at law, foreclosing any need for equitable relief, because such claims are "certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Milliken*, 286 S.C. at 8, 685 S.E.2d at 832.  The relief provided under § 362(k) adequately enables Plaintiff to achieve the goal of establishing her payment history and determining whether HFC misapplied any payments and/or charged any unwarranted fees to her account.  Therefore, Plaintiff's cause of action asserting a demand for accounting should be dismissed.

### 4. *FAILURE TO RESPOND TO QWR*

Plaintiff alleges that HFC's failure to respond to the QWR she served on or about January 21, 2011, amounts to a violation of RESPA pursuant to 12 U.S.C. § 2605(e). RESPA requires a mortgage servicer who "receives a [QWR] from the borrower (or an

---

[37] *Id.* at ¶ 58.
[38] *Id.* at 10-11, ¶ 71.
[39] *Id.* at 10, ¶ 63; 11, ¶ 72.

agent of the borrower) for information relating to the servicing of such loan, [to] provide a written response acknowledging receipt of the correspondence within 20 days."[40]   A "qualified written request" consists of written correspondence from a borrower that identifies the borrower and account at issue, and "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Within sixty (60) days after receipt of a QWR, the servicer must investigate the matters addressed by the request and respond to the borrower in writing.  The response must do one of three things: 1) correct the error identified by the borrower, *id.* § 2605(e)(2)(A); 2) explain "the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," *id.* § 2605(e)(2)(B); or 3) provide the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *Id.* § 2605(e)(2)(C).  The servicer's violation of these provisions entitles the borrower to recover actual damages, as well as statutory damages of up to $1,000 where the borrower shows a "pattern or practice of noncompliance." *Id.* § 2605(f).

Plaintiff's Complaint merely alleges that "[b]ased upon HFC's failure to respond to Plaintiff's QWR, Plaintiff is entitled to (a) statutory damages; (b) treble damages; and (c) costs and reasonable attorney's fees for the prosecution of this action."[41]   In order to be sufficient, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P.

---

[40] At the hearing on this matter, the parties argued over the applicability of the Dodd-Frank Wall Street Reform Act, Pub. L. No. 111-203, § 1463, 124 Stat. 1376, which requires the mortgage servicer to acknowledge receipt of the QWR within five (5) days.  The Court finds that this Bill's application to the instant proceeding has no bearing on the Courts decision, concluding that Plaintiff failed to sufficiently allege damages. *See infra* at 21-23.

[41] Doc. No. 1 at 16-17, ¶ 106.

8(a)(2).   The requisite "showing" under Rule 8 is more than "a blanket assertion[] of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3 (citations omitted).   Further, the District Court for the District of South Carolina has previously required plaintiffs to "show economic harm as result of not receiving a written explanation of the amount due on their loan [in response to a QWR]." *Serfass v. CIT Group/Consumer Fin. Inc.*, C/A No. 8:07-90-WMC, 2008 WL 4200356, at * 1, *5 (D.S.C. Sept. 10, 2008) (quotation marks and citations omitted).   The Court finds that Plaintiff's mere recitation of damages without any supporting facts as to how she was damaged is insufficient to establish a claim for violation of RESPA. *See Aniel v. Litton Loan Servicing, LP*, Case No: C 10-00951 SBA, 2011 U.S. Dist. LEXIS 18870, at *15-*16 (N.D. Cal. Feb. 11, 2011) (citing *Morris v. Bank of Am.*, Case No: C 09-02849 SBA, 2011 U.S. Dist. LEXIS 9767, 2011 WL 250325, at *5 (N.D. Cal. Jan 25, 2011) (dismissing RESPA claim where plaintiffs failed to allege that they had suffered actual damages resulting from defendants' failure to respond to their QWRs.)).

Plaintiff's Objection to HFC's Motion to Dismiss cites two cases addressing this issue; however, these cases are distinguishable from this instant proceeding.  First, Plaintiff cites *Boyd v. Chase Home Fin., LLC*, Case No: 8:11-cv-1657-T-26AEP, 2011 U.S. Dist. LEXIS 104036 (M.D. Fla. Sept. 14, 2011), which denied the servicer's motion to dismiss the plaintiff's claim for violation of RESPA. *Id.* at *2.  However, the court in *Boyd* indicated at the outset that the plaintiff in that case was *pro se*.  Therefore, the court was "required to take into account [p]laintiff's *pro se* status by liberally construing all of the allegations of his

compliant and subjecting those allegations *to a less stringent standard than if drafted by an attorney*." *Id.* at *1 (emphasis added) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).   In the instant case, Plaintiff has been represented by counsel throughout her bankruptcy case as well as this adversary proceeding.   Therefore, Plaintiff's Complaint is not entitled to the leeway afforded to *pro se* litigants and employed by the *Boyd* court.

Plaintiff also cites *Stephenson v. Chase Home Fin. LLC*, Civil No. 10cv2639-L(WMc), 2011 U.S. Dist. LEXIS 54791 (S.D. Cal. May 23, 2011), which held that the plaintiffs sufficiently alleged actual and statutory damages recoverable under RESPA. *Id.* at *11.   The *Stephenson* court found that the plaintiffs sufficiently alleged actual damages because the complaint asserted that, due to the defendants' incomplete response to their QWR, the plaintiffs "did not have the information necessary to seek loan modification to enable them to remain in their home." *Id.* (quotation marks and citations omitted).   In addition, the plaintiffs "asserted that with the necessary information, they would have been able to negotiate with the lawful owner to pursue modification of the terms of their mortgage loan.   Instead, they had to file for bankruptcy protection to stop the foreclosure sale of their home." *Id.* (quotation marks and citations omitted).   The court also found that the plaintiffs sufficiently plead statutory damages because "[t]he allegation that [p]laintiffs intend to seek statutory damages based on [d]efendants' business practice of failing to respond to borrow inquiries is sufficient to put [d]efendants on notice." *Id.*   However, in the instant case Plaintiff did not describe how she suffered actual damages or how HFC's actions constituted a "pattern or practice of noncompliance" with RESPA, warranting the recovery of statutory damages. 12 U.S.C. § 2605(f)(1)(B).

Therefore, even if HFC did not comply with the RESPA provisions pertaining to QWRs, *id.* § 2605, Plaintiff failed to sufficiently allege that she suffered actual damages and/or statutory damages resulting from HFC's alleged RESPA violation. Accordingly, cause exists to dismiss this cause of action.

### 5. SCUTPA

Any claims by Plaintiff based on pre-confirmation conduct must be dismissed as discussed above, leaving only those portions of the cause of action based on post-confirmation acts. To maintain a cause of action under SCUTPA, Plaintiff must show the following elements:

> (1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

*Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 291 (4th Cir. 1998).

Plaintiff's Complaint recites the elements of a SCUTPA claim without providing any factual basis as to what actions undergone by HFC constitute a violation of SCUTPA. In addition, Plaintiff merely asserts that HFC "engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of [its] business, in violation of [SCUTPA] . . ."[42] without indulging as to what acts of HFC were "unfair or deceptive." Plaintiff does not direct the Court's attention to any specific common law, statutory or constitutional violation of HFC that might amount to an "unlawful trade practice." *See Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 588-89 (4th Cir. 2003). Furthermore, the Court calls into question whether an alleged violation of the automatic stay, in itself, is sufficient to bring a separate claim for violation of SCUTPA. Therefore,

---

[42] *Id.* at 23, ¶ 145.

the Court finds that Plaintiff has failed to sufficiently allege a claim for violation of SCUTPA. *See Flucker v. The Rental Home Store (In re Flucker)*, C/A No. 11-03801-hb, Adv. Pro. No. 11-80078-hb, slip op. at 15-16 (Bankr. D.S.C. Oct. 21, 2011) (dismissing Plaintiffs' SCUTPA claim for similar reasons).   Consequently, cause exists for dismissal of this claim in its entirety.

### D. ADDITIONAL CLAIMS FOR RELIEF RAISED IN OBJECTION TO MOTION TO DISMISS

Plaintiff argues in her Objection to HFC's Motion to Dismiss that she is entitled to relief pursuant §§ 105, 506, and Fed. R. Bankr. P. 2016.  Plaintiff claims that the Court may use its equitable powers under § 105(a) to enforce the provisions of § 506 and Rule 2016, to augment the allegations of the Complaint.  However, Plaintiff did not plead these causes of action in her Complaint and it has not been amended to add such claims.  Therefore, the Court will not consider Plaintiff's claim for relief under these provisions.

### III. CONCLUSION

For the reasons discussed above, the following causes of action are hereby **DISMISSED**: 1) *Count I, objection to the proof of claim filed by HFC*—as to any causes of action or challenges to the claim resulting from pre-confirmation conduct of HFC or causes of action Plaintiff could have asserted pre-confirmation (except as indicated below); 2) *Count II, violation of the automatic stay*—to the extent that it is based on allegations of pre-confirmation activity or relies on the filing of a proof of claim; 3) *Count III, demand for accounting*; 4) *Count IV, fraud on the court*; 5) *Count VI, Truth-In-Lending Act ("Regulation Z") and rescission*; 6) *Count IX, attorney preference—SCCPC*; 7) *Count X, unauthorized practice of law*; 8) *Count XI, aiding and abetting breach of fiduciary du*ty; 9)

*Count XII, SCUTPA*—to the extent that it involves pre-confirmation conduct; and 10) *Count XIII, unconscionability—S.C. Code § 37-5-108.*

Further, Plaintiff shall have fourteen (14) days from entry of this order to amend the Complaint to cure any pleading deficiencies for the following in a manner consistent with this Order: 1) *Count VII, failure to respond to QWR*; and 2) *Count XII, SCUTPA*—to the extent that it relates to any post-confirmation activity.  If Plaintiff fails to do so within that time, these causes of action are also **DISMISSED**.

Finally, HFC's Motion to Dismiss is **DENIED** as to the following: 1) *Count I, objection to the proof of claim filed by HFC*—to the extent that Plaintiff's causes of action or challenges are based on post-confirmation conduct of HFC, or involve challenges to the allowance of the claim when applying the terms of the pre-petition contract between the parties as modified by the plan and only to the extent that the challenge is not contrary to matters finally determined in this case by confirmation, including disputes that could or should have been raised pre-confirmation arising from the same set of facts; and 2) *Count II, violation of the automatic* stay—to the extent that it is based on allegations of post-confirmation activity and not based on the act of filing the proof of claim.

**AND IT IS SO ORDERED.**